IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TERRANCE LAMONT KINER,            )
                                  )
    Plaintiff,                    )
                                  )
VS.                               )       No. 12-2254-JDT
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social Security,  )
                                  )
    Defendant.                    )

ORDER AFFIRMING COMMISSIONER'S DECISION

This action was filed by the Plaintiff, Terrance Lamont Kiner, to obtain judicial review of the defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Plaintiff's applications for benefits were denied initially and upon reconsideration by the Social Security Administration. At the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 25, 2011. (R. 26-46.) On February 7, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 10-21.) The Appeals Council denied Plaintiff's request for review on March 7, 2012. (R. 1-3). Thus, the ALJ's decision became the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. The reviewing court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* Judicial review is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604–08 (6th Cir. 2009); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Perales*, 402 U.S. at 401; *Lindsley*, 560 F.3d at 604-05; *Kyle*, 609 F.3d at 854. The Commissioner, not the reviewing court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on September 3, 1979, and has an eighth grade education. (R. 19, 29-30, 140.) He has past relevant work experience as a laborer, truck driver, machine operator, stock clerk, grocery bagger, janitor, sorter, and dishwasher. (R. 19, 42-43, 146.)

Plaintiff alleged that he became disabled on January 18, 2007, due to the residual effects from a traumatic brain injury, bipolar disorder, depression, memory loss, and other mental problems. (R. 13, 145, 154, 204.)

The ALJ found that Plaintiff met the non-disability insured status requirements and had not engaged in substantial gainful activity since his alleged disability onset date. (R. 12.) The ALJ also found that Plaintiff's depressive disorder and cognitive disorder were severe impairments and that his impairments did not, either singly or in combination, meet or medically equal a listed impairment in 20 C.F.R., Pt. 404, Subpt. P, Appendix 1. (R. 13-15.) The ALJ determined that Plaintiff's statements regarding the extent of his limitations were not fully credible. (R. 16.) The ALJ further found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. However, he could understand, remember, and carry out only simple one- and two-step instructions and adapt to minimal changes in the work environment. (R. 15-19.) The ALJ also determined that Plaintiff was unable to perform his past relevant work. (R. 19.) Relying on the testimony of a vocational expert ("VE"), the ALJ also determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 19-20). Accordingly, Plaintiff was not under a disability at any time through the date of the decision. (R. 20.)

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The initial burden of going forward is on the claimant to show that he is disabled from engaging in her former employment; the burden

then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*; *see Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.
4. An individual who can perform work that he has done in the past will not be found to be disabled.
5. If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. *Id.*; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). Here, the analysis proceeded to step five, where the ALJ determined there are jobs existing in significant numbers in the national economy that the Plaintiff can perform based on age, education, past work experience, and residual functional capacity.

Plaintiff first contends the ALJ erred in failing to find that he meets Listing 12.02, for Organic Mental Disorders, and Listing 12.04, for Affective Disorders. At the Listing level, the burden of proof is on the claimant to show that her impairment "meet[s] *all* of the specified medical criteria" of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Likewise, in order to show that an impairment is "equivalent" to a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531; *Foster*, 279 F.3d at 355.

Plaintiff specifically contends the ALJ should have determined that he meets the Paragraph B criteria of Listings 12.02 and 12.04, which can be satisfied by showing at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, perisistance, or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.02B, 12.04B. Plaintiff asserts that the opinion of Dr. Yvonne H. Osborne, Ph.D., a consultative psychologist who examined him on July 14, 2009, shows that he meets this Paragraph B criteria. However, the ALJ gave Dr. Osborne's opinion only limited weight. Instead, the ALJ gave greater weight to the opinion of a state agency reviewing psychologist, Dr. Cal VanderPlate, Ph.D.

The opinion of an examining physician is generally given more weight than that of a non-examining medical source. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However,

an ALJ need not give "good reasons" for rejecting the opinion of an examining but non-treating source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) (recognizing that the requirement in §§ 404.1527(c)(2) and 416.927(c)(2) that the SSA give "good reasons" for rejecting the opinion of a medical source applies only to *treating* sources). Nevertheless, an ALJ should properly evaluate the opinion evidence from each medical source in the record by considering the factors set out in the regulations, such as whether the opinion is supported by medical signs, laboratory findings, and detailed explanation; whether the opinion is consistent with the record as a whole; the specialty of the medical source; and how familiar the source is with the other evidence in the record. 20 C.F.R. §§ 404.1527(c)(3)-(6) & 416.927(c)(3)-(6).

Plaintiff reported to Dr. Osborne that his mental problems began after he suffered a head injury in an automobile accident in 1999. He stated he was treated as a psychiatric inpatient in 2006 and in 2007 and then on an outpatient basis with medication and counseling. Based on her examination and observations, Dr. Osborne found that Plaintiff's memory and concentration was impaired, and she assessed him as having marked limitations in the areas of understanding, remembering, concentrating, persistence, and pace.

Plaintiff further reported to Dr. Osborne that he managed his hygiene and grooming without assistance; assisted with household chores, laundry, preparing meals, and shopping; felt he could manage his own finances; used public transportation without assistance and could find his way to an unfamiliar part of town alone; attended church every week; socialized with friends, neighbors, and relatives; exercised; and enjoyed various pastimes

such as television, radio, reading, sitting outside, playing games, talking on the phone, and going places. Notwithstanding these reported activities of daily living, Dr. Osborne then opined:

> Mr. Kiner reports that he manages activities of daily living adequately. However, his presentation during this evaluation causes this examiner to suspect that he is not as productive as he reports. He depends on others for financial support and assistance with transportation. He identified meaningful relationships in his life; and he identified adequate pleasurable activities. However, this examiner suspects that he does not actively interact socially and that he spends much of his time alone.

(R. 322.) Dr. Osborne did not give an actual rating to Plaintiff's degree of limitation with regard to his activities of daily living. However, she concluded that Plaintiff had moderate restrictions in the area of social interaction and marked restrictions in the area of adapting to changes in work settings and requirements. Plaintiff contends Dr. Osborne's overall opinion is sufficient to show that he satisfies the Paragraph B criteria of Listings 12.02 and 12.04.[1]

The ALJ found that Dr. Osborne's conclusions regarding the degree of Plaintiff's limitations were inconsistent with the evidence in the record as a whole. He stated:

> The degree of functional limitation assessed by Dr. Osborne . . . is largely belied by his activities of daily living. The claimant previously performed substantial gainful activity following his purportedly disabling brain injury. He had a driver's license in the past, navigates public transportation without

---

[1] Plaintiff also appears to argue that the GAF (Global Assessment of Functioning) score of 45 that Dr. Osborne assessed on the day of the evaluation shows that he was seriously impaired. However, GAF scores can vary and fluctuate from day to day. In addition, GAF scores "may have little or no bearing on the subject's social and occupational functioning," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006), and thus are of little use in determining whether an individual has the ability to work.

assistance, attends to personal hygiene and grooming independently, interacts with family, attends church, enjoys socializing with friends and participating in athletics. Treatment records do no otherwise contain any clinical findings of any pathology that could impose the extreme degree of functional limitation that she opined to be present. Because Dr. Osborne's opinion is unsupported by medical evidence and inconsistent with the record as a whole, it is given limited evidentiary weight . . . to the extent that it is consistent with the residual functional capacity set forth above.

(R. 18.) The ALJ did not err in giving Dr. Osborne's opinion only limited weight.[2] Dr. Osborne indicated that she "suspected" that Plaintiff's activities of daily living were more restrictive than he reported, based on his "presentation" during the examination. However, she made no attempt to explain what that meant, and the conclusion has no other basis in the medical evidence of record.

Dr. VanderPlate, the non-examining psychologist, found that Plaintiff's mental limitations were no more than mild to moderate in any area. This opinion is consistent with the other evidence in the record, including the treatment evidence, which shows that Plaintiff was able to return to substantial gainful employment for several years after his automobile accident, although he had some problems with memory and concentration. From 2006 to 2009, he was treated for his mental health issues only sporadically, usually after he would stop taking his medication, sometimes for months. At the time of the hearing in January 2011, Plaintiff had sought no mental health treatment for over a year.

---

[2] The ALJ did not completely reject Dr. Osborne's opinion. He incorporated her conclusions regarding Plaintiff's limitations in memory and concentration, and his limitations in adapting to changes in the work environment, into the residual functional capacity determination.

After considering the record as a whole, the Court concludes the ALJ did not err in giving limited weight to the opinion of Dr. Osborne and greater weight to the opinion of Dr. VanderPlate. Thus, substantial evidence supports the ALJ's determination that Plaintiff did not meet the Pargraph B criteria of Listings 12.02 and 12.04 and his determination of Plaintiff's residual functional capacity. Accordingly, the Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE